UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

SHIRELY FAYE GILLESPIE )
 )
V. ) NO. 2:11-CV-136
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's application for Disability Insurance benefits under the Social Security Act was denied following an administrative hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 9 and 16].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 58 years of age, a person of "advanced age." She had a high school education with some college. Her past relevant work experience is as a secretary, a cashier, and as a "member service representative." This latter occupation, which is critical to the ALJ's finding, requires sedentary exertion and is semi-skilled to skilled. If she could not return to a past-relevant job, and was limited to a reduced range of sedentary work as found by the ALJ, then the Commissioner would be faced with the language of 20 CFR III, Pt. 404, Supt. P, App. 2, Section 201.00(d). This part of the "Grid" states that "the adversity of functional restrictions to sedentary work at advanced age (55 and over) for individuals...who can no longer perform vocationally relevant past work and have no transferable skills, warrants a finding of disabled..."

Plaintiff asserts that she is disabled by the effects of heart disease. Her medical history is set forth in the Commissioner's brief as follows:

> In 2002, Gillespie had triple bypass surgery during a one week hospital visit (Tr. 317, 341). Four years later, in May 2006, cardiologist Dr. R. Keith Kramer performed cardiac catheterization (insertion of a catheter into the heart) (Tr. 206). Dr. Kramer was a little disappointed that circulation in one of Gillespie's heart arteries was not better, but advised against another operation, as Gillespie had no symptoms (Tr. 206). Three months later, Dr. Kramer noted that Gillespie was doing well and had increased her exercise regimen without experiencing any angina (Tr. 204-05). Dr. Kramer saw Gillespie again in February 2007 and April 2008, each time noting that Gillespie was doing well (although she had some generalized weakness in February 2007) (Tr. 200-03). Gillespie remained employed until December 2008 (Tr. 119). She alleges that after that time she was unable to work due to coronary artery disease (Tr. 109).

2

>   In March 2009, consultative physician Dr. Samuel D. Breeding examined Gillespie and diagnosed her with coronary artery disease, with a history of triple bypass surgery (Tr. 319). He opined that Gillespie was capable of sitting for up to six hours in an eight-hour day and standing for up to four hours in an eight-hour day (Tr. 319). Dr. Breeding also wrote that Gillespie should not lift more than 20 pounds occasionally and should avoid strenuous and sustained physical activity (Tr. 319). He did not note any abnormalities in his physical examination of Gillespie, and gave normal cardiovascular and musculoskeletal observations (Tr. 318).
>   One month later, state agency physician Dr. Molly S. Chatterjee opined that Gillespie could lift/carry 20 pounds occasionally and 10 pounds frequently (Tr. 329). Dr. Chatterjee also wrote that Gillespie could stand/walk for six hours out of an eight-hour day and sit for six hours out of an eight-hour day (Tr. 329). She also gave some positional limitations that are not material to the case (Tr. 330). Two months later, state agency physician Dr. Denise P. Bell reviewed the medical records and affirmed Dr. Chatterjee's assessment (Tr. 337).
>   In April 2009 (four months after she became unemployed and two months after she allegedly became disabled), Gillespie returned to Dr. Kramer for her yearly checkup (Tr. 320-21). Dr. Kramer noted that Gillespie had stable coronary artery disease, with mild left ventricle dysfunction (Tr. 321). He further commented that Gillespie had high cholesterol, chronic elevated liver function tests, and hypertension (Tr. 321). Dr. Kramer also remarked that Gillespie was doing well, with no angina symptoms, but with some generalized fatigue and stress (Tr. 320). He also noted that the results of his physical examination of Gillespie were within normal limits (Tr. 321).
>   At the same time that Gillespie was being treated by Dr. Kramer, she also periodically saw her primary care physician, Dr. Kevin D. Misischia (Tr. 270-74, 356-57). Dr. Misischia treated her for hypertension, high cholesterol, post-menopausal issues, and elevated or mildly elevated liver enzymes (Tr. 270-74, 356-57).

[Doc. 17, pgs. 2-4].

Both the plaintiff and her husband testified at the administrative hearing that the sitting on her job as a member service representative caused her feet and ankles to swell from edema. When asked about getting up and moving around on that job, she stated she was "pretty much tied" to where she performed her work, without "a lot of time to just get up and stretch, move around." (Tr. 28). She worked at that job for six years after her heart attack, ceasing work in 2008. (Tr. 29). She complained of extreme fatigue during and after work.

3

(Tr. 30). She sees her heart doctor once a year and her family doctor every three or four months. (Tr. 32).

At the administrative hearing, the ALJ also took the testimony of Donna Bardsley, a Vocational Expert ["VE"]. Ms. Bardsley identified her work as a loan officer and call center representative as sedentary, and skilled an semi-skilled, respectively. (Tr. 43). The ALJ then asked a series of "hypothetical" questions. He asked the VE to assume a person of plaintiff's age, education and work experience. He asked her to assume the person could do light work with "occassional ramps, stairs, no ladders, ropes, scaffolds, avoid concentrated exposure to heat and cold." She identified jobs such as cashiers, sales clerks, information clerks, order clerks and stock clerks, with 10,000 in the region and 8.5 million nationally. (Tr. 43-44). The next hypothetical asked the VE to assume the same factors, except the addition of a sit/stand option. She identified cashiers, order clerks, hand packagers, sorters and assemblers with 6,000 regional and 5 million national jobs. The next hypothetical asked her to assume the same person with the same restrictions except limited to sedentary work without the sit/stand option. He asked if there would be jobs and if she could do any of her past relevant work with those limitations. Ms. Bardsley answered yes to both questions. She stated the plaintiff could return to her past relevant occupations of loan officer and call center representative. Also, other jobs were identified, such as cashier, information clerk, order cler, hand packager, sorter and assembler, with 4,000 in the region and 3 million in the nation. If plaintiff were limited to the extent she testified to, there would be no jobs. (Tr. 44-45).

In his hearing decision, the ALJ found that the plaintiff had the severe impairments

4

of coronary artery disease and ischemic cardiomyopathy. He found that she had the residual functional capacity ["RFC"] to perform sedentary work that allows no more than occasional climbing of ramps and stairs and that does not include climbing ropes, ladders or scaffolds or work involving exposure to extreme heat and cold. (Tr. 16). He then reviewed the plaintiff's medical history, including her treatment records, the examination of Dr. Breeding, and the opinions of the State Agency physicians. He found plaintiff's "statements concerning the intensity, persistence and limiting effects of [her reported] symptoms...not credible to the extent they are inconsistent..." with the ALJ's finding of RFC. (Tr. 17-18). He "rejected" the opinions of Dr. Breeding and the State Agency physicians that the plaintiff could do a reduced range of light work, to give her "every benefit of doubt" in limiting her to the RFC he found for a reduced range of sedentary work. He pointed out that there were no recommendations of restrictions in the treatment notes of any of her physicians. He recounted her daily activities, which were "inconsistent with an individual who is totally disabled." He noted that, contrary to her testimony at the hearing, the treatment records of plaintiff's office visits to her physicians "reflect numerous occasions on which the claimant did not specify any particular complaints, which contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date." (Tr. 19).

He then found that she was capable, with the RFC found by him, of performing her past relevant work as a loan officer and as a call center worker. Accordingly, she was found to be "not disabled." (Tr. 20).

Plaintiff's counsel, in the manner which is always appreciated by this Court, makes a succinct argument. Plaintiff asserts that substantial evidence does not support the ALJ's

5

Case 2:11-cv-00136-JRG-DHI   Document 18   Filed 01/18/12   Page 5 of 8   PageID #: 59

finding that she could perform the reduced range of sedentary work opined in the RFC finding because he did not include in his restrictions the requirement "to alternate between sitting and standing" which she asserts was manifest in the report of Dr. Breeding. She points out that sedentary work "is precluded by an impairment that requires a plaintiff to alternate sitting and standing," citing *Preston v. Secretary of Health and Human Services*, 854 F.2d 815, (6th Cir. 1988), which stated that "the concept of sedentary work contemplates substantial sitting as well as some standing and walking. Alternating between sitting and standing, however, may not be within the definition of sedentary work." *Id.*, at 819. In other words, she says the ALJ erred because sedentary work, and her past relevant work according to her testimony, requires more sitting than Dr. Breeding found her capable of.

The Court assumes that the genesis of this argument is in the report of Dr. Breeding where he opines that plaintiff "can sit for up to 6 hours in an 8-hour day...[and] can stand for up to 4 hours in an 8 hour day." (Tr. 319). Plaintiff appears to be saying that this language implies that Dr. Breeding opined that the plaintiff can sit for six hours in the workday, and stand or walk for four hours, and that therefore, she must be allowed to alternate between sitting and standing which "may not be within the definition of sedentary work."

*Preston, supra*, relies upon other Sixth Circuit cases and upon Social Security Ruling 83-12, for the proposition proposed by the plaintiff, that a person who is precluded from sitting virtually the entire working day is not capable of sedentary work. That Social Security Ruling, found at 1983 WL 31253, states in part as follows:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to

> sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

*Id.*, at pg. 4.

Dr. Breeding imposed no sit/stand at will requirement on the plaintiff, and the Court is unwilling to make the inference plaintiff seems to suggest from the opinion that the plaintiff is capable of 6 hours of sitting. That time frame of six hours is contained in virtually every physical medical assessment, and is contained in all preprinted forms used by the Commissioner in obtaining physical medical assessments, such as "SSA-4734-BK (08-2008)" utilized by State Agency physician Chatterjee (Tr. 329). In almost all other cases which this Court can recall, if a person could sit for 6 hours, stand or walk for two hours, and lift 10 pounds occasionally and frequently, they could perform sedentary work in the absence of a non-exertional impairment imposing further limitations not relevant to the facts here.

In any event, the opinions of Dr. Breeding and Dr. Chatterjee provide substantial evidence that the plaintiff was capable of a reduced range of *light* work. Only the ALJ limited her to sedentary exertion, and it makes no good sense to penalize him for doing so. There is substantial evidence to support his finding that plaintiff could perform the reduced range of sedentary work included in his RFC, and the VE's testimony is substantial evidence that she could return to her past relevant work.

Plaintiff also asserts that the ALJ erred in not finding the plaintiff credible in her

description of her limitations. The plaintiff's daily activities discussed thoroughly by the ALJ and the lack of restrictions from treating physicians provide substantial evidence for this finding. Credibility determinations by administrative fact finders should not be disturbed by this Court except in the most obvious and egregious of circumstances.

There was substantial evidence to support the ALJ's finding that the plaintiff could return to her past relevant work as a loan officer and call center worker, and his credibility determination. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 9] be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 16] be GRANTED.[1]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

8